IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

———————————

AMANDA MORALES,

      Plaintiff,

      v.                                                                                             No. 1:21-cv-01044-KWR-JHR

SUPREME MAINTENANCE INC., WADE HUNT,
and GLORIA SANCHEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Supreme Maintenance Inc., Wade Hunt, and Gloria Sanchez Motion to Dismiss (**Doc. 32**), filed May 2, 2022, and Motion to Strike Plaintiff's Surreply (**Doc. 36**), filed June 8, 2022.  Having reviewed the parties' pleadings and the relevant law, the Court finds that Defendants' Motion to Dismiss (**Doc. 32**) is well-taken in part, and therefore, is **GRANTED IN PART AND DENIED IN PART**.  Defendants' Motion to Strike (**Doc. 36**) is **WELL-TAKEN**, and therefore, is **GRANTED**.

## BACKGROUND

This case arises from the alleged discrimination, wrongful termination, and retaliation against Plaintiff Amanda Morales by her employer, Defendant Supreme Maintenance Inc. Plaintiff was employed as a janitorial worker by Supreme Maintenance from February 21, 2019 to December 30, 2019.  *See* **Doc. 1, at 8 ¶ 1**.  Defendants Wade Hunt and Gloria Sanchez worked as the operations administrator and operations director, respectively.  *Id.* **at 7**.

Plaintiff first alleges that she faced sex discrimination.  Plaintiff alleges that her job was advertised as paying between $9.50 to $13.00 per hour, **Doc. 1, at 8 ¶ 3**, however, Plaintiff was

only paid $9.15 per hour and was paid less than male employees and other employees without similar experience. *Id.* ¶¶ **3–4**.

Next, Plaintiff alleges that she experienced discrimination on the basis of her national origin. Plaintiff claims that Supreme Maintenance had a "preference" for employees who spoke Spanish, a language which Plaintiff could not speak. *Id.* **at 13–14**. Plaintiff asserts that as a result of her inability to speak Spanish, she did not receive the same work or the same wages as other employees. *Id.* **at 14**.

Plaintiff also alleges that she faced unsafe working conditions. Plaintiff alleges that Supreme Maintenance failed to provide janitorial employees with proper cleaning supplies and instructed Plaintiff to use "corrosive chemicals" without any protective gear or training. *Id.* **at 8–9, ¶¶ 9–11**. Plaintiff alleges that she later became ill and experienced nausea, headaches, "heart palpitations, anxiety, nerve damage[,]…kidney[] and lung damage" as a result. *Id.* ¶ **13**. Plaintiff was later hospitalized due to her symptoms, and when she informed her supervisors, she was allegedly "call[ed] names, threatened [and] belittled" her instead. *Id.* ¶¶ **13–15**. Plaintiff claims that she was "mistreated" by managers and faced a hostile environment as a result. *Id.* ¶¶ **26–27**.

Additionally, Plaintiff alleges that she faced sexual harassment at work. Plaintiff was assigned by Supreme Maintenance to clean a call center for Concentrix Corp. *Id.* ¶ **1**. Plaintiff alleges that Jamie Martinez, a facility manager at Concentrix, repeatedly "propositioned [Plaintiff] for sexual favors." *Id.* ¶¶ **18–19**. Plaintiff repeatedly declined Mr. Martinez' advances, however he began to "yell, complain, [and] be aggressive" in response. *Id.* Plaintiff informed her supervisor of these incidents, and her supervisor encouraged her to inform officials at Supreme Maintenance. *Id.* ¶ **23**. Plaintiff alleges that she reported these incidents to Defendants Sanchez and Hunt, but that same day, she was told that her "hours were going to be cut." *Id.* ¶¶ **24–25**.

2

Plaintiff alleges that in retaliation for lodging her complaint, Mr. Martinez falsely accused Plaintiff's husband, who also worked at Supreme Maintenance, of theft. *Id.* ¶¶ **29, 43–44**. Plaintiff further alleges that she repeatedly asked Supreme Maintenance to investigate her sexual harassment claims, however, Defendants Sanchez and Hunt declined to act even after she provided an audio recording of an incident between herself and Mr. Martinez. *Id.* ¶¶ **25, 34–37, 47–51**.

Plaintiff asserts that Supreme Maintenance stated it was terminating her position because she failed to appear for scheduled shifts, *id.* ¶¶ **47–51**, but maintains that she was fired when she requested that Defendants Hunt and Sanchez investigate her sexual harassment claims and when she informed them that she intended to pursue action with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* **at 18**. After her termination, Plaintiff attempted to collect unemployment benefits, but alleges that Supreme Maintenance obstructed Plaintiff's efforts. *Id.* **at 12 ¶¶ 52–53**.

Plaintiff later filed a complaint with the EEOC and the New Mexico Environment Department. *Id.* ¶¶ **54–56**. Plaintiff then filed suit asserting the following 14 claims[1]: Wage Protection (Count I); National Origin Discrimination (Count II); Unsafe Working Conditions (Count III); Infliction of Emotional Distress (Count IV); Workplace Injury Retaliation (Count V); Workplace Injury (Count VI); False Reporting to the New Mexico Environment Department (Count VII); Sexual Harassment (Count VIII); Retaliation (Count IX); Wrongful Termination (Count X); Unemployment Benefits Fraud (Count XI); Breach of Implied Contract (Count XII); Hostile Work Environment (Count XIII); and Spousal Affiliation (Count XIV). Defendants now file the instant motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* **Doc. 32**.

---

[1] The Court presents Plaintiff's claims sequentially, notwithstanding Plaintiff's mislabeled counts.

**LEGAL STANDARD**

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

**DISCUSSION**

The Court is mindful that Plaintiff in this action appears *pro se*. A *pro se* litigant's pleadings are to be construed liberally and are held to a less stringent standard than formal pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court can overlook the "failure to cite proper legal authority," "confusion of various legal theories," "poor syntax and sentence construction," or "unfamiliarity with pleading requirements." *Id.*

However, the Court cannot assume the role of advocate for a *pro se* litigant, *id.*, and the Court cannot "supply additional facts [or] construct a legal theory for [the] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

I. **Whether Plaintiff Plausibly Alleged that She Exhausted Administrative Remedies.**

Defendants move to dismiss Count I (Wage Protection, Title VII)[2], Count II (National Origin Discrimination), Count V (Workplace Injury Retaliation), Count VI (Workplace Injury), Count XIII (Hostile Work Environment), and Count XIV (Spousal Affiliation) asserting that Plaintiff has failed to exhaust her administrative remedies under Title VII of the Civil Rights Act of 1964 ("Title VII") or the New Mexico Human Rights Act ("NMHRA"). *See* **Doc. 32, at 6**.

The NMHRA makes it an unlawful for an employer to discriminate against any qualified person because of race, age, religion, color, national origin, ancestry, sex, sexual orientation, gender identity, pregnancy, childbirth, physical or mental handicap or serious medical condition, or spousal affiliation. *See* N.M. Stat. Ann. § 28-1-7(A). The NMHRA requires an individual to first exhaust his or her administrative remedies before bringing a lawsuit. *See Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380, 382, 872 P.2d 353, 355. To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the New Mexico Human Rights Bureau or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of nondetermination from the New Mexico Human Rights Division. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 16, 127 N.M. 282, 287, 980 P.2d 65, 70.

Likewise, Title VII forbids employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 82 (1976). "To bring a Title VII claim, a plaintiff must file a charge of discrimination with either the

---

[2] Defendants treated Count I as asserting claims under Title VII and the Fair Pay for Women Act, *see* **Doc. 32, at 5– 6**, thus, the Court's addresses only the Title VII claim here.

5

EEOC or an authorized state or local agency and receive a right to sue letter." *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 882 (10th Cir. 2020). Failure to exhaust administrative remedies is now an affirmative defense and not a jurisdictional bar. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181–86 (10th Cir. 2018).

Defendants argue that Plaintiff did not file "a charge of discrimination based on national origin, unequal pay, workplace injury/disability, hostile work environment or spousal affiliation, with either the [New Mexico] Human Rights division or the EEOC and defendants have had no opportunity to respond." *See* **Doc. 32, at 7**. Plaintiff alleges that she filed a charge with the EEOC regarding "the sexual harassment she experienced" and retaliatory discharge, *see* **Doc. 1, at 12 ¶ 54**; *id.* **at 18–19**, and therefore, she argues that she exhausted her administrative remedies. *See* **Doc. 33, at 10**. Other than Count XIV (Spousal Affiliation), which Plaintiff brings under the NMHRA, Plaintiff asserts the remaining claims under Title VII.

"A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter." *See Lincoln*, 900 F.3d at 1181 (internal quotations omitted). "This individual filing requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Id.* Thus, "[e]ach discrete incident of discriminatory or retaliatory treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 688 (10th Cir. 2018) (internal alterations omitted) (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). This means that "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (internal

quotations and alterations omitted).  Generally, however, a complaint is not dismissed for failure to exhaust unless such failure is clear on the face of the complaint.  *See, e.g.*, *Morales v. Runyon*, 844 F. Supp. 1435, 1436 (D. Kan. 1994).

Plaintiff attached to her Complaint the "Order of Non-Determination" issued by the New Mexico Human Rights Bureau, **Doc. 1, at 24**, while Defendants provide the charge document that Plaintiff filed with the EEOC, **Doc. 32-1, Ex. A**.  The Court can consider these documents because they are referenced in Plaintiff's Complaint, are central to the claims, and no party disputes their authenticity.  *See Martin v. Cent. States Emblems, Inc.*, 150 F. App'x 852, 857 (10th Cir. 2005) (explaining that "a court may review documents referred to in a complaint if the document is central to the plaintiff's claim and the parties do not dispute the authenticity of the documents," without converting a motion to dismiss into a motion for summary judgment).

Here, Plaintiff checked boxes for "sex" and "retaliation," and her formal EEOC complaint only provided details about the sexual advances she faced at work and Supreme Maintenance's termination of her employment because she filed a sexual harassment complaint.  *See* **Doc. 32-1, Ex. A, at 1**.  The charge document did not provide any facts suggesting that she had been subjected to (1) a hostile work environment based on bullying, (2) faced sex discrimination in compensation or disparate pay, or (3) was discriminated because of national origin or (4) spousal affiliation.  Nor did Plaintiff allege that she provided such information in her EEOC complaint.  Thus, it is clear from the face of Plaintiff's Complaint that she did not exhaust these claims prior to bringing this suit.  Therefore, the Court shall dismiss Plaintiff's Counts I, II, XIII, and XIV without prejudice for failure to exhaust administrative remedies.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies

should be *without* prejudice."); *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1166 (10th Cir. 2018) (same).

The Court, however, shall not dismiss Counts V and VI for failure to exhaust. Count VI is a common law tort claim, which does not require claim exhaustion as an element, and Count V is asserted under a separate federal statute not relevant to Plaintiff's claims under Title VII or the NMHRA.

## II. Whether the Remaining Counts Shall be Dismissed for Failure to State a Claim.

### A. The Court Shall Dismiss the Fair Pay for Women Act Claim (Count I).

Plaintiff alleges that Defendants violated the New Mexico Fair Pay for Women Act ("FPWA") by failing to pay her the same wages paid to men despite performing the same job responsibilities.[3] *See* **Doc. 1, at 13**. Defendants contend that Plaintiff cannot assert a claim under the Equal Pay Act ("EPA"), 29 U.S.C. § 206,[4] because the Complaint does not allege that Plaintiff performed work which was substantially equal to male employees after considering "skills, duties, supervision, effort, and responsibilities of the jobs," nor does Plaintiff allege the same working conditions as male employees who were paid more. *See* **Doc. 32, at 5–6**.

The FPWA prohibits discrimination on the basis of sex "by paying wages to employees…at a rate less than the rate that the employer pays wages to employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort and responsibility and that are performed under similar working conditions." N.M. Stat. Ann. § 28-23-3(A). The FPWA and the EPA are "coterminous," and courts may look to EPA legal principles to analyze FPWA claims. *See Darr*, 403 F. Supp. 3d at 1001; *Burke v. New Mexico*, 696 F. App'x 325, 333 n.4 (10th Cir.

---

[3] Plaintiff also brings Count I under the "Equality Act 2010," however, no such statute exists under federal law or New Mexico law.

[4] Though Defendants rely on the EPA, the legal arguments presented are still applicable for the reasons discussed below.

2017) (recognizing a dearth of New Mexico case law discussing the FPWA and looking to the EPA to address wage discrimination claims). Thus, to state a claim under the FPWA, Plaintiff must allege she was performing substantially equal work compared to a male employee, she was performing such work under similar conditions, and the male employee was paid more. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997). A "failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." *Id.*

Here, Plaintiff alleges that she "was doing the same job as other males," "she had prior experience," and was only paid $9.15 per hour while "the other males were all paid more than her with or without experience." *See* **Doc. 1, at 13**. Plaintiff's allegations are conclusory, and she fails to describe *how* her position was substantially equal and *how* the working conditions were the same. Plaintiff's general assertions and bare legal conclusions are insufficient to plausibly state a claim under the FWPA. Thus, the Court shall dismiss Count I (Fair Pay for Women Act) without prejudice.

## B. The Court Shall Dismiss the Occupational Safety Claims (Counts III and V).

Defendants assert that Plaintiff brings Counts III (Unsafe Working Conditions) and V (Workplace Injury Retaliation) under the Occupational Safety and Health Act ("OSHA"), which they argue "does not support a private right of action for discrimination based in whole or in part on the voicing of workplace safety concerns." *See* **Doc. 32, at 7**. Plaintiff maintains that Defendants violated OSHA "safety requirements." *See* **Doc. 33, at 6**.

OSHA was enacted to ensure healthy and safe working conditions for employees. *See* 29 U.S.C. § 651; *Marshall v. Intermountain Elec. Co.*, 614 F.2d 260, 262 (10th Cir. 1980). "Its primary purpose is to ensure that violations of [OSHA] are reported, rather than to vindicate private interests." *Marshall*, 614 F.2d at 262. OSHA only allows an employee to file a complaint—which

must be filed within 30 days of the discrimination or discharge—with the Secretary of Labor who then decides whether to bring an action on the employee's behalf. *See* 29 U.S.C. § 660(c)(2). Thus, OSHA "does not create a private cause of action on behalf of injured workers." *Accord Douglass v. United Auto Workers, Loc. 31*, 368 F. Supp. 2d 1234, 1248 (D. Kan. 2005); 29 U.S.C. § 653(b)(4) ("Nothing in [OSHA] shall be construed to…enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries…arising out of, or in the course of, employment."); *see also Kennedy v. Gill*, No. 21-3101-SAC, 2021 WL 4523463, at *3 (D. Kan. Oct. 4, 2021). Therefore, Plaintiff cannot pursue a private cause of action based on Defendants alleged OSHA violations. Accordingly, the Court shall dismiss Counts III and V with prejudice.

### C. The Court Shall Dismiss the Infliction of Emotional Distress Claim (Count IV).

Defendants argue that Count IV (Infliction of Emotional Distress) must be dismissed for failure to state a claim because Plaintiff's allegations, even if true, "are not indicative of conduct that is sufficiently extreme or outrageous." *See* **Doc. 32, at 7–8**. Plaintiff alleges that Defendants refused to investigate the sexual harassment she experienced, she was traumatized as a result, and that Defendants failed to understand the "seriousness of the situation." *See* **Doc. 33, at 11**.

Under New Mexico law, to recover for intentional infliction of emotional distress, the plaintiff must show that "the [defendant's] conduct was extreme and outrageous under the circumstances, that the [defendant] acted intentionally or recklessly, and that as a result of the conduct the [plaintiff] experienced severe emotional distress." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 47, 127 N.M. 47, 57, 976 P.2d 999, 1009. To qualify as "extreme and outrageous," the conduct must be "so outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See Salazar v. Furr's, Inc.*, 629 F. Supp. 1403, 1411 (D.N.M. 1986).

Here, Plaintiff fails to state a claim for intentional infliction of emotional distress. Plaintiff's allegations rest on Defendants' failure to investigate her reports of sexual harassment, disrespect from her supervisors, termination based on false reports, and Defendants' failure to provide adequate unemployment assistance. *See* **Doc. 1, at 15**. While Defendants' alleged actions were surely hurtful and distressing to Plaintiff, there are no specific factual allegations from which the Court could infer extreme and outrageous conduct. Therefore, the Court shall dismiss Count IV without prejudice.

### D. The Court Shall Dismiss the False Reporting Claim (Count VII).

Defendants allege that Count VII (False Reporting to the New Mexico Environment Department), which Plaintiff brings under N.M. Stat. Ann. § 50-4-17, must be dismissed because the statute under which Plaintiff rests her claim is a criminal statute and does not allow for a private right of action. *See* **Doc. 32, at 8**. Plaintiff fails to substantively respond.

Under N.M. Stat. Ann. § 50-4-16, every covered employer must keep a time record showing the number of hours each employee worked each day. Section 50-4-17 provides criminal penalties for failure to do so, and any employer who fails to keep a record, or who makes any false entry therein, "shall be guilty of a misdemeanor" and shall be fined for each offense. The Court can find no authority permitting Plaintiff to bring a private right of action under § 50-4-17 for failure to maintain records. Accordingly, Count VII is dismissed with prejudice.

### E. The Court Shall Dismiss the Unemployment Fraud Claim (Count XI).

Defendants allege that Plaintiff's claim for unemployment fraud must fail because (1) if Plaintiff seeks to assert improper denial of benefits, she must "follow the appropriate grievance

process with the appropriate unemployment agency," and (2) if she seeks to assert a claim for fraud, Plaintiff has failed to satisfy Federal Rule of Civil Procedure 9(b)'s requirement that fraud should be plead with sufficient particularity.  *See* **Doc. 32, at 8–9**.  Plaintiff retorts that Defendants "lied to the Unemployment department" which resulted in an overpayment of benefits and which caused her "financial hardship[]."  *See* **Doc. 33, at 5**.

Plaintiff appears to assert a claim for fraud, rather than for a denial of benefits.  *See id.*; **Doc. 1, at 19**.  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy this standard, the complaint must, at a minimum, "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings*, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) (internal quotations omitted).

Here, Plaintiff fails to set forth the time, place, and contents of the false statements; for example, Plaintiff does not explain with particularity the "lie[s]" allegedly told by Supreme Maintenance.  Plaintiff also generally asserts that Defendant Supreme Maintenance failed to provide wage documents causing her to be overpaid benefits.  But "[a] plaintiff's pleading obligations in cases asserting fraud based on a theory of failure to disclose require a plaintiff to allege facts that, if true, would give rise to a duty of disclosure." *See S2 Automation LLC v. Micron Tech., Inc.*, 281 F.R.D. 487, 495 (D.N.M. 2012) (internal quotations and alterations omitted); *Robertson v. Carmel Builders Real Est.*, 2004-NMCA-056, ¶ 31, 135 N.M. 641, 651, 92 P.3d 653, 663 ("An omission as well as an act, may constitute fraud. When one is under the duty to speak, but remains silent and so fails to disclose a material fact, he may be liable for fraud.").  Plaintiff

has not done so here. Thus, Plaintiff fails to plead her fraud claim with sufficient particularity, and accordingly, Count XI is dismissed without prejudice.

### F. The Court Shall Dismiss the Breach of Implied Contract Claim (Count XII).

Plaintiff asserts a breach of implied contract based on Defendants alleged failure to follow "specific and mandatory employee handbook policies" prior to the termination of her employment. *See* **Doc. 1, at 20**. In New Mexico, employment is generally for an indefinite period and is terminable at the will of either party. *See Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 4, 115 N.M. 665, 668, 857 P.2d 776, 779. Thus, in the absence of an express or implied contract providing otherwise, "an employee is presumed to be an employee-at-will." *Kiedrowski v. Citizens Bank*, 1995-NMCA-011, ¶ 7, 119 N.M. 572, 575, 893 P.2d 468, 471. New Mexico courts, however, have recognized two exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy and an implied contract that restricts the employer's power to discharge. *See, e.g.*, *Hartbarger*, 857 P.2d at 779; *Kestenbaum v. Pennzoil Co.*, 1988-NMSC-092, ¶ 11, 108 N.M. 20, 24, 766 P.2d 280, 284. The second exception is the basis for Plaintiff's Count XII claim.

"A promise, or offer, that supports an implied contract might be found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct." *Id.* at 780. "To create contractual rights, however, the terms of the representation must be sufficiently explicit to create a reasonable expectation of an implied contract." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 2002-NMSC-004, ¶ 22, 131 N.M. 607, 615–16, 41 P.3d 333, 341–42. "The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied

upon." *Gonzales v. City of Albuquerque*, 849 F. Supp. 2d 1123, 1167 (D.N.M. 2011) (internal quotations omitted), *aff'd*, 701 F.3d 1267 (10th Cir. 2012).

Here, Plaintiff claims that an implied contract existed because she "agreed to and signed" Defendant Supreme Maintenance's employee handbook which provided that employees may not be terminated but for "poor performance" or "good-faith business reason[s]." *See* **Doc. 1, at 20**. Plaintiff alleges that the handbook states that "failure to show up for any scheduled shifts is considered a no call no show and 'could result in disciplinary actions,'" and that Defendants terminated her for missing scheduled shifts although the handbook did not call for termination. *See id.*; **Doc. 1, at 11–12, ¶ 48**. Defendants argue that this claim must be dismissed because even assuming the handbook provided a "disciplinary scheme," Plaintiff failed to allege "what the policies consisted of, that an implied agreement existed, or that Defendants violated any terms of such implied agreement." *See* **Doc. 32, at 9**.

Taking Plaintiff's allegations as true, the Court concludes that Plaintiff's allegations fall short of stating a claim. The existence of the handbook "does not in and of itself create a reasonable expectation that [Supreme Maintenance] would fire only for cause." *See Hartwell v. Sw. Cheese Co., LLC*, 276 F. Supp. 3d 1188, 1207 (D.N.M. 2016). Plaintiff has failed to specifically allege what "policies, practices, assurances, and other express and implied statements" were presented to her. *Id.* Thus, Plaintiff has failed to plead with specificity a claim for breach of implied contract on the basis that her employment could not be terminated for missing shifts. The Court, therefore, shall dismiss Count XII without prejudice.

### G. The Court Shall Not Dismiss the Title VII Retaliation Claim (Counts IX and X).

Defendants seek to dismiss Plaintiff's retaliation claims in Counts IX (Retaliation) and X (Wrongful Termination). *See* **Doc. 32, at 12**. Title VII makes it unlawful to retaliate against an

employee for opposing practices made unlawful by the statute.  42 U.S.C. § 2000e-3(a).  To state a prima facie case of retaliation, a plaintiff must allege facts that show (1) she engaged in protected activity, (2) the employer took a materially adverse action, and (3) that a causal connection exists between the protected activity and the materially adverse action.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

 Defendants challenge only the first prong, arguing that Plaintiff's allegations "do not make 'any reference' to her race, national origin, or other protected characteristics," and that Plaintiff's "generic allegations regarding her 'report' do not state a plausible claim that [s]he engaged in protected activity."  *See* **Doc. 32, at 12**.  Defendants' arguments are unpersuasive.

Under Title VII, a plaintiff engages in protected activity if he or she opposes employment discrimination based on race, color, religion, sex, or national origin.  *See Dean v. Computer Scis. Corp.*, 384 F. App'x 831, 838 (10th Cir. 2010).  "Title VII's prohibition against sex discrimination includes a ban on sexual harassment."  *Zunie v. Azar*, No. CV 18-1219 WJ/SCY, 2019 WL 3219231, at *3 (D.N.M. July 17, 2019).  "[T]o qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [anti-discrimination statutes]."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  "Protected opposition can range from filing formal charges to voicing informal complaints to superiors."  *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004); *see also Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  Moreover, "opposition activity is protected when it is based on a mistaken [but] good faith belief that Title VII has been violated."  *See Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).

At the outset, the Court will construe Plaintiff's claim for wrongful termination as arising under Plaintiff's Title VII retaliation claim, as the two draw from the same facts.  Thus, the Court shall treat these claims as one.  Here, Plaintiff alleges that she engaged in protected activity by opposing sexual harassment by an employee at a job site she was assigned by Supreme Maintenance.  Plaintiff alleges that she was propositioned by a man because of her gender or sex, thus she makes reference to a protected characteristic.  Plaintiff further alleges that she reported the sexual harassment to her supervisor and Defendants Hunt and Sanchez, and that she was terminated shortly after asking for an investigation and informing the company that she would pursue an inquiry with the EEOC.  *See* **Doc. 1, at 11–12, 18**; *Long v. E. New Mexico Univ. Bd. of Regents*, No. CV 13-380 RB/SMV, 2015 WL 13667230, at *5 (D.N.M. Jan. 26, 2015) (finding that plaintiff "successfully alleges that she opposed violations of Title VII…[because] she complained to her superiors, in seeming good faith, that Defendant Quick was subjecting her to sexual harassment.").  The Court must accept Plaintiff's factual allegations as true, and Plaintiff has adequately pled a Title VII retaliation claim based on Plaintiff's opposition to sexual harassment.  Thus, the Court denies Defendants' motion to dismiss Counts IX (Retaliation) or X (Wrongful Termination).

### H.  The Court Shall Not Dismiss the Sexual Harassment Claim (Count VIII).

Finally, Defendants move to dismiss Plaintiff's claim for sexual harassment.  *See* **Doc. 32, at 12**.  "Sexual harassment is a form of discrimination that is prohibited by the NMHRA." *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 23, 135 N.M. 539, 549, 91 P.3d 58, 68.  "[C]ourts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987); *Ocana*, 91 P.3d at 69.  Plaintiff appears to assert a claim for

16

sexual harassment under the NMHRA under a hostile work environment theory.[5]  *See* **Doc. 1, at 17**.

A hostile environment is created "when the offensive conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Ocana*, 91 P.3d at 69.  To establish a hostile work environment due to sexual harassment, a plaintiff must prove that: (1) "the employee was subjected to unwelcome sexual harassment," (2) "the harassment occurred because of the employee's sex," (3) "the harassment was sufficiently severe or pervasive to create an abusive work environment affecting a term, condition, or privilege of employment," and (4) "the employer knew, or should have known, of the harassment and failed to take remedial action." *Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 6, 136 N.M. 647, 650, 103 P.3d 571, 574.

Defendants only argue that Plaintiff's allegations are conclusory, and "[a]t most, Plaintiff alleges that she was subjected to sexual harassment by an individual not employed by Defendants and not subject to [Defendants'] control or supervision."  *See* **Doc. 32, at 12**.  Defendants' argument must also fail here.

An employer may be found liable for the harassing conduct of its customers or non-employees.  *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073 (10th Cir. 1998).  "An employer who condones or tolerates the creation of [a hostile work] environment should be held liable regardless of whether the environment was created by a co-employee or a nonemployee, since the employer ultimately controls the conditions of the work environment." *Id.* at 1073–74.  Thus, in such circumstances, employers may be held liable "if they "fail to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of

---

[5] This claim pertains to facts separate from Plaintiff's Count XIII (Hostile Work Environment) which was based on alleged "bull[ying]," "disrespect[]," and "name calling."  *See* **Doc. 1, at 20**.

reasonable care should have known." *Id.* at 1074 (internal quotations omitted); *Turnbull v. Topeka State Hosp.*, 255 F.3d 1238, 1244 (10th Cir. 2001).

Here, Plaintiff alleged that she informed her supervisor and Defendants Hunt and Sanchez of the sexual harassment she faced by a non-employee. *E.g.*, **Doc. 1, at 10 ¶¶ 25, 34**. Plaintiff further alleged that Defendants failed to investigate or take action. *E.g.*, *id.* **¶¶ 26, 39**. Thus, at this stage, the Court concludes that Plaintiff has pleaded sufficient facts to state plausible sexual harassment claim under a hostile work environment theory under the NMHRA. Therefore, the Court denies Defendants' motion to dismiss Count VIII (Sexual Harassment).

### III.     The Court Shall Grant Defendants' Motion to Strike.

Defendants also move to strike Plaintiff's "Motion to Strike" (**Doc. 35**), which Plaintiff filed in response to Defendants' reply. *See* **Doc. 36**. Defendants argue that no new arguments were raised in its reply in support of its motion to dismiss, and Plaintiff's motion to strike is merely a surreply filed without leave of the Court. *Id.* **at 2–3**. The Court agrees.

The filing of a surreply requires leave of the Court. D.N.M.LR-Civ. 7.4(b). Surreplies are "disfavored," *see Mosaic Potash Carlsbad, Inc. v. Intrepid Potash, Inc.*, No. 16-CV-0808 KG-SMV, 2020 WL 1033172, at *1 (D.N.M. Mar. 3, 2020), however, "the nonmoving party should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1163 (10th Cir. 1998). Here, Plaintiff did not seek leave before filing a surreply, and Defendants' reply responded only to issues raised by Plaintiff in her response. *See* **Doc. 34**. Accordingly, the Court shall grant Defendants' motion to strike Plaintiff's surreply, and the Court did not consider Plaintiff's surreply in deciding this motion.

## CONCLUSION

Plaintiff Morales has failed to plausibly state a claim on Counts I–V, VII, and XI–XIV. However, the Court declines to dismiss Counts VI (Workplace Injury), VIII (Sexual Harassment), IX (Retaliation), and X (Wrongful Termination) at this procedural stage.

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss (**Doc. 32**) is hereby **GRANTED IN PART** and **DENIED IN PART** for reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED** that **Counts III, V, and VII** are **DISMISSED WITH PREJUDICE**; and

**IT IS FURTHER ORDERED** that **Counts I, II, IV, XI, XII, XIII, and XIV** are **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND**.[6] Plaintiff is granted leave to file an amended complaint on these counts within **thirty (30) days** of entry of this Memorandum Opinion and Order. If Plaintiff fails to do so, the Court may, upon motion of a party or *sua sponte*, dismiss Counts I, II, IV, XI, XII, XIII, and XIV with prejudice. Defendants will have **twenty-one (21) days** to respond should Plaintiff file an amended complaint; and

**IT IS FINALLY ORDERED** that Defendants' Motion to Strike Plaintiff's Surreply (**Doc. 36**) is **GRANTED**.

**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

---

[6] *See, e.g.*, *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (explaining that dismissal of a *pro se* complaint with prejudice for failure to state a claim is only proper where it would be futile to give the plaintiff an opportunity to amend).